Joyce W. Lindauer
State Bar No. 21555700
Lindauer & Vaughn
117 S. Dallas Street
Ennis, Texas 75119
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR/PLAINTIFF

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **WHITESTONE UPTOWN TOWER, LLC, a/k/a Pillarstone Capital REIT Operating Partnership,** | § § § | **CASE NO. 23-32832-mvl-11 Chapter 11** |
| | § | |
| **Debtor.** | § § | |
| **WHITESTONE UPTOWN TOWER, LLC,** | § § | |
| **Plaintiff,** | § § | |
| | § | |
| **v.** | § | **ADVERSARY NO. 25-03061** |
| | § | |
| **WHITESTONE REIT OPERATING PARTNERSHIP L.P.** | § § | |
| | § | |
| **and** | § | |
| | § | |
| **WHITESTONE TRS, INC.,** | § | |
| | § | |
| **Defendants.** | § | |

**<u>THIRD AMENDED COMPLAINT</u>**

**TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:**

Whitestone Uptown Tower, LLC, debtor in the above-referenced bankruptcy case and plaintiff herein, files this Third Amended Complaint against Defendants Whitestone REIT Operating Partnership, L.P. and Whitestone TRS, Inc, and would respectfully show the Court as follows:

## I. PARTIES

Whitestone Uptown Tower, LLC ("Plaintiff") is a Delaware limited liability company doing business in the State of Texas. Plaintiff is the former owner and operator of a twelve-story 253,000 square foot office tower located at 4144 North Central Expressway in Dallas, Texas (the "Property").

Whitestone REIT Operating Partnership, L.P. ("WROP") is a Delaware limited partnership doing business in the State of Texas and may be served with process through its Texas registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

Whitestone TRS, Inc. is a Delaware corporation doing business in the State of Texas and may be served with process through its Texas registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## II. JURISDICTION AND VENUE

Plaintiff filed a voluntary petition for protection under Chapter 11 of the Bankruptcy Code on December 1, 2023. The Plaintiff's plan of reorganization was confirmed by order of the Court on July 3, 2024 (Dkt. 319).

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(a). Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## III. FACTS

1. Plaintiff was formed in 2013 for the purpose of owning and operating the Property. Plaintiff owned the Property continuously from 2013 to mid-July 2025, when the Property was sold pursuant to an order of this Court (Dkt. 464 in the main bankruptcy case). The Plaintiff is owned by Pillarstone Capital REIT Operating Partnership, LP (the "Partnership"), the debtor in Case No. 24-30656 in this Court. The general partner of the Partnership is Pillarstone Capital REIT (the "General Partner"), the debtor in Case No. 24-30657 in this Court. Defendant WROP is owned by

Whitestone REIT, a Maryland investment trust. WROP was the limited partner of the Partnership until August 2026. From December 2016 to December 2025 when WROP caused the redemption of all but one of its ownership interests in the Partnership, WROP was the 81.4% equity owner of the Partnership, and the General Partner was the 18.6% equity owner of the Partnership. The Partnership repurchased the last remaining ownership interest of the Partnership held by WROP in August 2026. Whitestone TRS, Inc. ("TRS") is the wholly owned subsidiary of WROP.

2. For several years prior to the filing of this case, WROP acted as the manager of Plaintiff under Plaintiff's Limited Liability Company Agreement dated September 26, 2013 (the "Company Agreement")[1], and managed the Property through its wholly owned subsidiary, TRS, under a purported Management Agreement with the Partnership dated December 8, 2016 (the "Management Agreement"). During their terms as the managers of the Plaintiff and the Property, the Defendants knowingly and willfully failed to manage the Plaintiff and the Property as agreed and ran the Property into the ground. In July 2022, WROP abruptly ceased to perform its duties as manager under the Company Agreement and caused TRS to cease to manage the Property entirely and simultaneously obstructed the smooth transition of the management of the Property and the management of the Plaintiff to the Partnership for the benefit of the Plaintiff. It was at this time that the Plaintiff first became aware of the Defendants' numerous failures to repair and maintain the Property as described below.

3. The transaction that resulted in the formation of the Plaintiff was part of a larger series of transactions engineered by Whitestone REIT and WROP. In 2016, seeking to show Wall

[1] Under the Company Agreement, WROP was designated as the Manager of the Plaintiff. In the First Amendment to the Company Agreement dated December 2016, WROP was again designated as the Manager of the Plaintiff. In the Second Amendment to the Company Agreement dated November 30, 2023, WROP was removed as the Manager of the Plaintiff as a result of the below-described breaches of contract and inequitable conduct seeking to damage the Plaintiff and the Property.

Street that it was a "pure play" retail REIT, Whitestone REIT and WROP made the decision to transfer ownership of 14 commercial real estate properties in Houston and Dallas to several newly-formed entities, including the Plaintiff and other debtors in this case, because these properties were non-retail property outliers to Whitestone REIT and WROP's real property portfolio.

4. When the Partnership was formed, WROP made itself the limited partner in the Partnership with the majority of the membership interests, and made Pillarstone Capital REIT the General Partner. WROP also caused TRS, its wholly-owned subsidiary, to execute the Management Agreement with the Partnership for the on-site daily management of the Property, although the Partnership was not the owner of the Property with the authority to grant the right to manage of the Property. WROP and TRS were responsible for maintaining, repairing, leasing, and marketing all the Partnership's properties, including the Property owned by Plaintiff.

5. Instead of fulfilling these obligations, Defendants ***cannibalized*** the properties, including the Property owned by Plaintiff, allowing them to fall into disarray. Once the Defendants ceased performing under the Company Agreement and Management Agreement in July 2022, the Plaintiff discovered for the first time that the Defendants had failed to perform necessary capital repairs and that the Property suffered from numerous commercial infirmities, including roof damage, elevator malfunctions, curtain wall damage, parking garage damage, HVAC defects and persistent leaks, while also facing health and safety concerns, including vandalism, vagrancy, fire prevention and security malfunction, mold, structural cracks and pipe and plumbing deterioration Defendants' collective and joint failure to perform their obligations resulted in these issues, leading to the Property losing or being unable to find tenants and decreasing in value, inhibiting the Partnership from selling the Property, and causing the ultimate sale of the Property at a depressed

price far below the value that otherwise would have been obtained, as well as resulting in other damage to Plaintiff.

6. Moreover, as if that dereliction of duty was not enough, Defendants made it their personal mission to undermine the Plaintiff by their intentional abandonment of their duties to Plaintiff as the manager of the Plaintiff under the Company Agreement and the manager of the Property, after WROP learned that the General Partner was considering a plan to internalize management of the Partnership and the Property. The original intent of the Partnership was to maximize the value of the properties, including the Property at issue in this proceeding. To this end, in or about 2021, the General Partner determined that the best way to grow the business would be to amicably separate the Partnership and Property from the Defendants. Initially, the Defendants agreed. But the Defendants subsequently reversed course with no warning and started a full-blown, adversarial battle over the continued existence of the Partnership and its assets. WROP made it known that it would seek to liquidate predatorily the properties owned by the Partnership's subsidiaries, including the Property, for less than fair value.

7. Specifically, a new group of WROP's leadership—Peter Tripoli, Christine Mastandrea, and David Holeman—embarked on a scheme to pillage the Partnership assets, including the Plaintiff and the Property, all while breaching contractual and fiduciary obligations owed to the Plaintiff. This is not just a case of WROP's leadership deciding to defer maintenance on the Property. This was a ***scheme*** wherein the leadership literally (and figuratively) stripped the Property of fixtures, neglected and mishandled accounting data, denied consent to transfers, and refused to provide the Plaintiff with basic information about the operations, maintenance, and/or marketing of the Property after causing TRS to abruptly terminate the asset management, leasing, and accounting agreements, thereby leaving the Plaintiff with incomplete major capital projects,

unhappy tenants, and a dilapidated building. Upon information and belief, a few examples of the bad acts committed by the Defendants are:

a. TRS, acting in concert with and at the direction of WROP, terminated the Management Agreement with thirty (30) days' notice by letter dated July 19, 2022. After this termination, Defendants shirked all obligations to properly transition management of the Property.

b. Defendants actively hamstrung the Plaintiff from effectively taking over management of the Plaintiff and the Property, including, but not limited to, withholding essential documents, active theft of key fixtures at the Property, and failing to provide material information about the Property - all in addition to purposefully concealing significant problems with the Property.

c. The Defendants failed to provide essential documents to the Partnership and Plaintiff, including fire safety and other compliance certificates. Instead of cooperating, the Defendants immediately ceased management of the properties.

d. Defendants also refused to transition vendors for the Property and refused to transition accounting books and records, preventing Plaintiff from identifying tenants in the properties and rents due. What records Defendants did turn over were provided in hard copy, disorganized, and incomplete and ultimately unuseable, further hindering the Plaintiff from completing its financial reporting, including reporting due in this bankruptcy case. Finally, when Defendants terminated its agreement to manage the properties, it began cannibalizing them by removing fixtures and physically damaging the Property.

e. Defendants' refusal to transition management of the Property resulted in further damage and risk. Defendants refused to provide access to the cameras at the

Property and even terminated the phone lines necessary for fire safety. These direct efforts to frustrate the Partnership's attempts to take control of and manage the properties prohibited the Partnership from discovering and mitigating the damage Whitestone had wrought on the Property.

f. At the same time, Defendants purposefully took steps to cover up their accounting failures and frustrate the Plaintiff's ability to discover, much less rectify such. Upon taking over management of the properties, Plaintiff discovered improper, inaccurate, and/or incomplete rent rolls.

g. Defendants also maintained income and expense forms for the Property necessary to complete Plaintiff's accounting requirements. After repeated requests for the forms, the Defendants, in bad faith, refused to provide this necessary information to the Plaintiff or the Partnership, resulting in lost rent collection and other damages incurred by Plaintiff.

h. Defendants' misconduct caused the loss of multiple tenants at the Property. Tenancy issues were unable to be reversed because many parts of the Property were not able to be shown and commercially viable space had shrunk.



*Figure 1: Uptown Tower*



*Figure 2: Rusted water piping at Uptown Tower*



*Figure 3: Cracked piping at Uptown Tower*



*Figure 4: Mold behind vinyl wallpaper at Uptown Tower*

8. In addition, following their abandonment of duties as managers under the Company Agreement and the Management Agreement, Defendants failed to timely provide access and control to Plaintiff or the Partnership to Plaintiff's bank accounts, which were subject to a loan agreement secured by the Property. WROP's actions in causing TRS to abruptly terminate the Management Agreement and its own failure to continue its manager duties under the Company Agreement caused a breach of the loan agreement, while WROP intentionally acted to undermine Plaintiff's attempts to refinance the loan.

9. Previous appraisals for the Property valued the property at $31 million. But, due to the above property issues, the Plaintiff received offers that were significantly lower (that is by millions of dollars) than they should have been and was ultimately forced to sell the Property for approximately $20 million.

10. In sum, the above descriptions of the Property provide only a few examples of some of the most egregious problems suffered by the Property, which Defendants knowingly and in concert ignored in breach of their obligations to the Plaintiff. Moreover, Defendants intentionally impeded the development of the Property to the detriment of Plaintiff in violation of their respective duties to the Plaintiff and despite having no authority under the Company Agreement or Management Agreement to do so.

11. The Defendants' abandonment of the Plaintiff and the Property, termination of management and series of actions following the termination are in violation of their contractual and fiduciary duties to Plaintiff, thus giving rise to claims for breach of contract, breach of fiduciary duty, and setoff of any claim WROP may have against the Plaintiff.

## IV. CAUSES OF ACTION

### *A.* ***<u>Breach of Contract – Limited Liability Company Agreement</u>***

12. Plaintiff incorporates by reference the factual allegations set forth above.

13. During its term as the Manager of the Plaintiff, WROP's contractual duties under the Company Agreement included oversight of day-to-day operations and business decisions, including competent supervision of financial management, property management, maintenance of the books and records of the Plaintiff, and compliance with state and federal laws and regulations. This would include WROP's duty to supervise TRS in its performance as manager of the Property. WROP, in concert and collaboration with TRS, intentionally violated those duties as described above, which constituted multiple breaches of the Company Agreement. These breaches of the Company Agreement caused actual damages to the Plaintiff, for which WROP and TRS are liable.

### *B.* ***Breach of Fiduciary Duties***

14. Plaintiff incorporates by reference the factual allegations set forth above.

15. During its term as Manager of the Plaintiff, WROP had a fiduciary duty to act in the Plaintiff's best interests, including a duty of loyalty to prioritize the Plaintiff's interests over its own and avoid conflicts of interest. In addition, WROP owed a duty of care to the Plaintiff to act with the same care that an ordinary manager would in a similar position, including making reasonable business decisions in good faith. By its conduct described above WROP breached those fiduciary duties, causing actual damages to the Plaintiff, for which WROP is liable. TRS acted in concert and collaboration with WROP as its agent in this breach of fiduciary duty, and is likewise liable for damages caused to the Plaintiff.

### *C.* ***Exemplary Damages***

16. Plaintiff incorporates by reference the factual allegations set forth above.

17. Plaintiff would further show that Defendants' conduct was committed knowingly, willfully, intentionally, maliciously, with actual awareness, and with the specific and predetermined intention of injuring Plaintiff and enriching the Defendants. In order to punish the

Defendants for such egregious conduct and to deter such conduct in the future, Plaintiff seeks recovery against Defendants for exemplary damages.

### *D. Joint and Several Liability*

18. Plaintiff incorporates by reference the factual allegations set forth above.

19. WROP is the 100% owner of TRS and completely controlled and dominated TRS. WROP acted in concert with TRS in its dereliction of its contractual and fiduciary duties under the Company Agreement as described above. The relationship between WROP and TRS is so blurred that it is difficult to say which of their actions specifically caused the damages suffered by Plaintiff as a result of their gross misconduct. As a result, WROP and TRS are jointly and severally liable to Plaintiff for all damages described herein.

### *E. Setoff*

20. Under Texas law applicable in this Court, a right of setoff allows parties that owe money to each other to apply their mutual debts against each other, thereby reducing the amount to be paid to only the net difference.[2] Here, WROP has been allowed a subrogation claim in the amount of $13,632,764.25 (although that decision is currently the subject of a pending appeal). The damages caused by WROP's misconduct as detailed above constitute a mutual debt that may be set off against the WROP's claim herein, which would serve to reduce WROP's claim to the extent it is allowed on appeal.

---

[2] *Bandy v. First State Bank*, 835 S.W.2d 609, 618 (Tex. 1992). ("The doctrine of setoff is ancient, having its roots in early bankruptcy law in England. THOMAS W. WATERMAN, LAW OF SET-OFF, RECOUPMENT AND COUNTERCLAIM 10 n.* (1869). The effect of setoff was to allow a defendant in a suit for a debt to raise a debt owed by the plaintiff to the defendant as a defense or counterclaim. If the setoff was allowed the amount that the plaintiff would recover from the defendant was reduced by the amount that the plaintiff owed the defendant.").

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendants be cited to appear herein, and that on final trial, Plaintiff be awarded the following relief:

1. Actual damages for Defendants' breaches of the Company Agreement and damages caused by property management services, including but not limited to:

   a. The costs of repairing and maintaining the Property;

   b. The loss in value of the Property resulting from Defendants' failure to maintain the Property;

   c. The cost of replacing furniture improperly removed by Defendants from the Property;

   d. The loss of rent revenue resulting from Defendants' failure to maintain the properties; and

   e. Damages resulting from improper accounting including tenant occupancy and receivables from rent revenue.

2. Actual damages caused by the Defendants' breach of fiduciary duty, including but not limited to the damages described in section 1 above.

3. Exemplary damages resulting from Defendants' willful and malicious conduct;

4. Setoff of Plaintiff's damages for breach of contract against any claim of WROP that may be allowed on appeal.

5. Pre- and post-judgment interest as provided by law.

6. Reasonable and necessary attorneys' fees;

7. All costs of court;

8. Such other and further relief to which Plaintiff may show itself justly entitled.

Dated: September 4, 2026

Respectfully submitted,

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer
State Bar No. 21555700
Lindauer & Vaughn
117 S. Dallas Street
Ennis, Texas 75119
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR/PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2026, a true and correct copy of the foregoing Third Amended Complaint was served via email through the Court's ECF system upon the parties receiving electronic notice in this case.

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer